**The NATIONAL LIME & STONE CO.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 17230.**

United States Court of Appeals
Sixth Circuit.

Oct. 24, 1967.

Robert B. Gosline and Carl V. Bruggeman, Toledo, Ohio, for appellant.

John J. Kendrick, Toledo, Ohio, on brief, Shumaker, Loop & Kendrick, Toledo, Ohio, of counsel.

Thomas L. Stapleton, Atty., Dept. of Justice, Washington, D. C., for appellee.

Richard C. Pugh, Acting Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., on brief, Merle M. McCurdy, U. S. Atty., John G. Mattimoe, Asst. U. S. Atty., Toledo, Ohio, of counsel.

Before PECK and McCREE, Circuit Judges, and CECIL, Senior Circuit Judge.

McCREE, Circuit Judge.

This is a taxpayer's appeal from a partial summary judgment in favor of the government in an action for refund of income and excess profits taxes paid for the years 1950–1954. The sole issue is whether the taxpayer is entitled to a 15% depletion allowance for the stone produced at one of its quarries or to only the 10% allowance determined by the district court.

The depletion allowance in this case is governed by Sec. 114(b) (4) (A) of the Internal Revenue Code of 1939. That section provides a 5% depletion allowance for "stone" and then further provides:

(ii) in the case of coal, asbestos, brucite, *dolomite*, magnesite, perlite, wollastonite, calcium carbonates, and magnesium carbonates, 10 per centum,

(iii) in the case of metal mines, aplite, bauxite * * * *metallurgical grade limestone, chemical grade limestone* * * * 15 per centum, * *. (Emphasis added)

The material produced in plaintiff's quarry contained 54–55% calcium carbonate and 45–44% magnesium carbonate, with 1% or less impurities, and all parties agree that rock of this composition can properly be classified as "dolomite." It is equally clear, however from affidavits submitted by plaintiff in opposition to defendant's motion for partial summary judgment, that dolomite is generally regarded as a variety of "limestone" at least in a broad sense of that term, although "limestone" in a narrower sense usually refers to stone with a higher percentage of calcium carbonate than that found in dolomite.[1] The government repeats portions of these affidavits in its brief, and admits that dolomite is, at least in a broad sense, limestone. It is also undisputed that 90 to 95 per cent of the rock produced in plaintiff's quarry has been used by the chemical or metallurgical industries, thereby indicating that this rock is capable of use by those industries. In United States v. Wagner Quarries Co., 6 Cir., 260 F.2d 907 (1958), we approved capability of use by the chemical or metallurgical industries as a test for determining whether a particular mineral product was of chemical or metallurgical grade. Hence, the precise question we must consider is whether Congress intended to include dolomitic limestone within the category of chemical or metallurgical grade limestone.

The government contends that our decision in Erie Stone Company v. United States, 6 Cir., 304 F.2d 331 (1962) is dispositive of the present case, and the district court so held. In Erie Stone, we affirmed a district court determination that rock of a chemical composition almost identical to that of the rock in the present case was entitled to a depletion allowance of only 10 per cent. The district court in Erie Stone based its decision on a factual determination that the rock in question was not of chemical or metallurgical grade, as well as on a determination that, as a matter of law, Congress did not intend that rock classifiable as dolomite should also be regarded as limestone. We affirmed the judgment of the district court, and on petition for rehearing we stated:

[I]t is ordered that the petition for rehearing be, and is hereby, denied on the ground that the findings of fact of the district court that the dolomite in question is not limestone of chemical or metallurgical grade were supported by the evidence.

In the instant case, the record would not support a finding that the material in question is not of chemical or metallurgical grade, and the question of statutory interpretation is squarely before us.

In Erie Stone, Judge McAllister made a thorough examination of the legislative history of the statutory provision in question and concluded that the Congress intended to accord a depletion allowance of 15% to dolomite of chemical or metallurgical grade. We agree with that conclusion and we are further persuaded by the analysis of the Fourth Circuit in reaching a similar result in James River Hydrate and Supply Co. v. United States, 337 F.2d 277 (1964):

Collectively, the words "dolomite," "calcium carbonates" and "magnesium carbonates" encompass all of the limestones. If the insertion of one of those words into clause (ii) [of Sec-

1. For example, the affidavit of Dr. Kenneth Landes cites, among others, the following definition from Limestone and Dolomite, by Oliver Bowles, Information Circular 7738, Bureau of Mines, U. S. Dept. of Interior, March 1956:

"The essential constituent of limestone is calcium carbonate ($CaCO_3$). If the magnesium carbonate content is small the rock is known as 'high-calcium' limestone. If 10 percent or more of magnesium carbonate is present, it is called 'magnesian' or 'dolomitic' limestone. When the content of magnesium carbonate approaches 45 percent it is known as dolomite, which is the double carbonate of calcium and magnesium ($CaCO_3.MgCO_3$). The term 'limestone' in its broader sense includes dolomite."

tion 114(b) (4) (A)] was intended to withdraw a subclass of limestone from clause (iii) though meeting the grade specifications, then the insertion of the several words encompassing all of the limestones should be held to have withdrawn all limestone from clause (iii). Obviously, this was not the Congressional purpose. 337 F.2d at 280.

The judgment of the district court is reversed, and the case is remanded for proceedings not inconsistent with this opinion.